CCC:MEM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK




- - - - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF AN APPLICATION FOR SEARCH WARRANTS FOR:

THE PREMISES KNOWN AND DESCRIBED AS A WHITE LG CELLULAR TELEPHONE BEARING SERIAL NUMBER: 703CYYQ1339994 ("SUBJECT TELEPHONE #1"); AND

THE PREMISES KNOWN AND DESCRIBED AS A SILVER I-PHONE CELLULAR TELEPHONE IMEI NUMBER: 013886007910570 ("SUBJECT TELEPHONE #2").

- - - - - - - - - - - - - - - - - - - - - - X

AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

(Fed. R. Crim. P. 41)

EASTERN DISTRICT OF NEW YORK, SS:

RAUL MERCADO, being duly sworn, deposes and states that he is a Task Force Officer ("TFO") assigned to the Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such. Upon information and belief, there is probable cause to believe that there is located in the PREMISES KNOWN AND DESCRIBED AS A WHITE LG CELLULAR TELEPHONE BEARING SERIAL NUMBER: 703CYYQ1339994 ("SUBJECT TELEPHONE #1"); AND THE PREMISES KNOWN AND DESCRIBED AS A SILVER I-PHONE CELLULAR TELEPHONE IMEI NUMBER: 013886007910570 ("SUBJECT TELEPHONE #2") (collectively, the "SUBJECT TELEPHONES"), further described in Attachments A and C,

the things described in Attachments B and D, which constitute evidence, fruits and instrumentalities of a conspiracy to distribute and possess with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 841(b)(1)(A)(iii) and 846.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a TFO with HSI for approximately two years. Prior to that assignment, I was assigned for approximately 17 years to the Suffolk County Police Department ("SCPD") as a detective in the narcotics section. During my tenure with HSI and SCPD, I have investigated various federal criminal violations including narcotics trafficking. During the course of those investigations, I have conducted physical surveillance, monitored undercover operations, debriefed cooperating witnesses and confidential informants, monitored wiretaps, conducted controlled narcotics purchase and interviewed civilian witnesses. The information set forth below is based upon my experience and training as a law enforcement officer, my review of documents and other evidentiary items, debriefing of cooperating witnesses, and my discussions with other law enforcement agents. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only. Based on my experience, and in light of the information I have learned during this investigation, I believe there is probable cause that the SUBJECT TELEPHONES were used to communicate with others concerning a narcotics conspiracy, and to receive and store electronic information relating to the names, nicknames, telephone

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation.

numbers and pager numbers of criminal accomplices. It has been my experience that narcotics traffickers often communicate by telephone, pager and other electronic devices with their co-conspirators to plan and execute their criminal schemes.

BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

2. In or about and between September 2017 and October 2017, a confidential informant ("CI #1") observed CARMINE CORRIERI ("CORRIERI"), on dozens of occasions, sell cocaine base in Suffolk County, New York. Specifically, CI #1 pooled his/her money with other individuals and traveled to CORRIERI's home in Coram, New York. Upon arriving at CORRIERI's home, CI #1 observed individuals that he/she had pooled money with, purchase cocaine base from CORRIERI. During this time period, CI #1 personally observed CORRIERI sell in excess of 90 grams of cocaine base.[2]

3. In or about and between June 2016 and July 2016, a confidential informant ("CI #2"), on two occasions, purchased a total of approximately 3 grams of cocaine base from CORRIERI in Suffolk County, New York. Further, CI #2 provided law enforcement with a telephone number ("CORRIERI's PHONE")[3] that he/she had previously used to contact CORRIERI, most recently in August 2017. Additionally, CI #2 told law enforcement officers

---

[2] CI #1 identified the person from whom he/she purchased cocaine base as "Carmine" and identified a photograph of CORRIERI to law enforcement officers. CI #1 has proven reliable as information provided by him/her has been corroborated by other sources of evidence, including other informants, police database searches, police paperwork, social media accounts, and the observations of law enforcement.

[3] Without accessing the SUBJECT TELEPHONES it is not possible to determine if CORRIERI's PHONE is one of the SUBJECT TELEPHONES.

that he/she witnessed CORRIERI sell cocaine base to other individuals on dozens of occasions between August 2016 and June 2016.[4]

4. In or about August 2017, a confidential informant ("CI #3")[5] informed law enforcement officers that CORRIERI had been selling, among other drugs, cocaine base. CI #3 also provided the phone number for CORRIERI'S PHONE, a phone which CI#3 said CORRIERI was using to sell drugs.

5. Based on information provided by CI #1 and CI #2, CORRIERI sold in excess of 280 grams of cocaine base in Suffolk County, New York, between June 2016 and October 2017.

6. On October 31, 2017, CORRIERI was arrested outside of his home in Coram, New York, by the SCPD. The SUBJECT TELEPHONES were recovered from CORRIERI's person at the time of his arrest. Subsequent to being arrested, CORRIERI was read his Miranda rights, which he waived and agreed to be interviewed. During questioning, CORRIERI admitted, in sum and substance, that he has been dealing cocaine base since he was 18 years old. CORRIERI further stated that he currently sells approximately 70 grams of cocaine base per week. CORRIERI explained that he gets the cocaine base that he sells from a drug dealer in Bellport, New York. CORRIERI stated that on one occasion, in the summer of 2017,

---

4 CI #2 identified CORRIERI by CORRIERI's complete name. In addition, CI #2 identified a photograph of CORRIERI to law enforcement officers. CI #2 has proven to be reliable as information provided by him/her has been corroborated by other sources of information, including other informants, police database searches, police paperwork, social media accounts, and police observations.

5 CI #3 identified CORRIERI by CORRIERI's complete name. In addition, CI #3 identified a photograph of CORRIERI to law enforcement officers. CI #3 has proven to be reliable as information provided by him/her has been corroborated by other sources of information, including other informants, police database searches, police

CORRIERI purchased 50 grams of cocaine base, and was given an additional 50 grams of cocaine base on consignment, both for redistribution. During the course of the interview law enforcement officers requested CORRIERI's consent to open the SUBJECT TELEPHONES. CORRIERI responded, in sum and substance, "I've already helped you enough."

7. On November 29, 2017, CORRIERI was indicted for conspiracy to distribute and possess with intent to distribute cocaine base. See United States v. Corrieri, 17-CR-0659 (ADS). (Attached as Exhibit 1).

8. Based on my training, experience and discussions with other law enforcement officers, I understand that individuals involved in conspiracies to distribute and possess with intent to distribute narcotics, often do not act alone and often communicate with co-conspirators by means of cellular telephones such as the SUBJECT TELEPHONES. Such persons commonly maintain records that reflect names, addresses, or telephone numbers of their associates in their cellular telephones. They also commonly maintain records of communications such as call logs, chats and text messages in their cellular telephones. They commonly take photographs of themselves, their associates, or their property using their cellular telephones. These individuals usually maintain these records of communication and photographs in their possession and in their cellular telephones.

## TECHNICAL TERMS

9. As used herein, the following terms have the following meanings: Wireless telephone (or mobile or cellular telephone): A handheld wireless device used for voice and data communication through radio signals. These telephones send signals through

---

paperwork, social media accounts, and police observations.

networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and email; taking, sending, receiving and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device, and a wide variety of applications, also known as "apps," which may store the user's preferences and other data. Such apps may include Facebook, Twitter, and other social media services.

10. Based on my research, I understand that the SUBJECT TELEPHONES provide not only phone and text message services, but can also be used to send and receive emails; access the Internet; track GPS data; take, store and share photographs and videos; and use a wide variety of apps. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the SUBJECT TELEPHONES.

TECHNICAL BACKGROUND

11. As further described in Attachments B and D, this application seeks permission to locate not only data that might serve as direct evidence of the crimes described on the warrants, but also for forensic electronic evidence that establishes how the SUBJECT

TELEPHONES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence can be recovered from the SUBJECT TELEPHONES because:

a. Data on an electronic device can provide evidence of a file that was once on the device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the device that show what tasks and processes were recently active. Web browsers, email programs, and instant messaging/"chat" programs store configuration information on the device that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device was in use. Electronic devices can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on an electronic device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, instant messaging or chat logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the electronic device at a relevant time.

c. A person with appropriate familiarity with how an electronic device works can, after examining this forensic evidence in its proper context, draw conclusions about how devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic device that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, such evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding user attribution evidence, sometimes it is necessary to establish that a particular thing is not present on an electronic device. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

12. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrants I am applying for would permit the examination of the SUBJECT TELEPHONES consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

13. The SCPD and HSI seized the SUBJECT TELEPHONES on or about October 31, 2017. Since the seizure, the SUBJECT TELEPHONES have exclusively been in the custody of the SCPD and HSI. Because this application seeks only permission to examine the SUBJECT TELEPHONES, which are already in law enforcement's possession, the execution of the warrant does not involve intrusion into a physical location. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

CONCLUSION

14. Based on the foregoing, there is probable cause to believe that there is located in the SUBJECT TELEPHONES, further described in Attachments A and C, the things described in Attachments B and D, which constitute evidence, fruits and instrumentalities of a conspiracy to distribute and possess with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 841(b)(1)(A)(iii) and 846. Accordingly, the Court should issue the requested warrants.

15. WHEREFORE, your deponent respectfully requests that search warrants be issued for THE PREMISES KNOWN AND DESCRIBED AS A WHITE LG CELLULAR TELEPHONE BEARING SERIAL NUMBER: 703CYYQ1339994 AND THE

PREMISES KNOWN AND DESCRIBED AS A SILVER I-PHONE CELLULAR

TELEPHONE IMEI NUMBER: 013886007910570.

Dated: Central Islip, New York
February 5, 2018

RAUL MERCADO
Task Force Officer
HSI

Sworn to before me this
5 day of February, 2018

THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

ATTACHMENT A

Property To Be Searched

The property to be searched is a WHITE LG CELLULAR TELEPHONE BEARING SERIAL NUMBER: 703CYYQ1339994 ("SUBJECT TELEPHONE #1") seized on or about October 31, 2017 from the person of CARMINE CORRIERI, while in Coram, New York. The warrant authorizes the forensic examination of SUBJECT TELEPHONE #1 for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT B

Particular Things To Be Seized

All information obtained from SUBJECT TELEPHONE #1 will be maintained by the government for the purpose of authentication and any potential discovery obligations in any related prosecution. The information shall be reviewed by the government only for the purpose of identifying and seizing all information described below which constitutes evidence, fruits and instrumentalities of a conspiracy to distribute and possess with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 841(b)(1)(A)(iii) and 846, including:

1. All records and information on SUBJECT TELEPHONE #1 described in Attachment A, including (a) names and telephone numbers, as well as the contents of all call logs, contact lists, and (b) text messages, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, social media account activity (including postings and messages), Internet activity (including browser history, web page logs, and search terms entered by the user), and other electronic media constituting evidence, fruits, or instrumentalities of the violations described above.

2. Evidence of user attribution showing who used or owned SUBJECT TELEPHONE #1 at the time the things described in this warrant were created, edited, or deleted, such as, for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Evidence of software that would allow others to control SUBJECT TELEPHONE #1, such as viruses, Trojan horses, and other forms of malicious software, as

well as evidence of the presence or absence of security software designed to detect malicious software;

4. Evidence of the lack of such malicious software;

5. Evidence of the attachment to SUBJECT TELEPHONE #1 of other storage devices or similar containers for electronic evidence;

6. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from SUBJECT TELEPHONE #1;

7. Evidence of the times SUBJECT TELEPHONE #1 was used;

8. Passwords, encryption keys, and other access devices that may be necessary to access SUBJECT TELEPHONE #1; and

9. Contextual information necessary to understand the evidence described in this attachment, all of which constitute evidence, fruits and instrumentalities of the violations described above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

ATTACHMENT C

Property To Be Searched

The property to be searched is a SILVER I-PHONE CELLULAR TELEPHONE IMEI NUMBER: 013886007910570 ("SUBJECT TELEPHONE #2") seized on or about October 31, 2017 from the person of CARMINE CORRIERI, while in Coram, New York. The warrant authorizes the forensic examination of SUBJECT TELEPHONE #1 for the purpose of identifying the electronically stored information described in Attachment B.

ATTACHMENT D

Particular Things To Be Seized

All information obtained from SUBJECT TELEPHONE #2 will be maintained by the government for the purpose of authentication and any potential discovery obligations in any related prosecution. The information shall be reviewed by the government only for the purpose of identifying and seizing all information described below which constitutes evidence, fruits and instrumentalities of a conspiracy to distribute and possess with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 841(b)(1)(A)(iii) and 846, including:

1. All records and information on SUBJECT TELEPHONE #2 described in Attachment C, including (a) names and telephone numbers, as well as the contents of all call logs, contact lists, and (b) text messages, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, social media account activity (including postings and messages), Internet activity (including browser history, web page logs, and search terms entered by the user), and other electronic media constituting evidence, fruits, or instrumentalities of the violations described above.

2. Evidence of user attribution showing who used or owned SUBJECT TELEPHONE #2 at the time the things described in this warrant were created, edited, or deleted, such as, for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Evidence of software that would allow others to control SUBJECT TELEPHONE #2, such as viruses, Trojan horses, and other forms of malicious software, as

well as evidence of the presence or absence of security software designed to detect malicious software;

4. Evidence of the lack of such malicious software;

5. Evidence of the attachment to SUBJECT TELEPHONE #2 of other storage devices or similar containers for electronic evidence;

6. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from SUBJECT TELEPHONE #2;

7. Evidence of the times SUBJECT TELEPHONE #2 was used;

8. Passwords, encryption keys, and other access devices that may be necessary to access SUBJECT TELEPHONE #2; and

9. Contextual information necessary to understand the evidence described in this attachment, all of which constitute evidence, fruits and instrumentalities of the violations described above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.